## THOMAS BURTON'S LESSEE v. ROBERT PRETTYMAN, JOSEPH WAPLES, THOMAS BARTLEY and COMFORT McILVAIN.

Supreme Court. Sussex. March 13, 1797.

*Wilson's Red Book, 174.*

*Miller* and *Bayard* for plaintiff. *Wilson* and *Peery* for defendants.

Plaintiff offered a deposition of Catherine Burton taken and filed in a former ejectment for same title against Robert Prettyman and others.[1]

Objected by defendants' counsel that only one of these defendants was party to that suit, that the other three had no benefit of a cross examination, 1 Morg.Ess. 102, 97 etc.

*Miller.* The subject-matter of the deposition is pedigree, as to which hearsay is good evidence, 3 Term 719; a copy of an inscription on a tombstone, 12 Vin.Abr. 244, 1 Morg.Ess. 139; so are the herald's books.

Answered. The whole of this deposition is not of pedigree. The herald's books are only evidence on the account of their antiquity. The inscription on the tombstone was not made with a view to the title of the party offering it; but this deposition is the act of the party, and though a record, it is not evidence without the verdict and judgment, which are no evidence against the other three defendants.

PER CURIAM. READ, C. J. We admit it is evidence against Robert as far as relates to pedigree; as to the rest of it, strike it out; and with regard to the other defendants, if their title does not acknowledge any part of the contents of it, we will direct the jury with regard to them to take no notice of it.

It was corrected and read.

Afterwards defendants' counsel in going through their evidence offered the verdict and judgment in a former cause by same plaintiff against Robert Prettyman and others, who were not defendants in this cause, relative to the same lands.

Plaintiff's counsel said they would object to it unless defendants would permit them to give in evidence a special verdict taken in a second cause by same plaintiff and William Prettyman and others (not defendants in this cause), relative to the same title and patent; which, defendant's counsel refusing, they made their objection that this verdict and judgment would not be evidence

---

[1] See above, *Wilson's Red Book, 58.*

against defendants if produced by plaintiff, and all evidence ought to be reciprocal.

*Wilson* read a case or two cited in 1 Morg.Ess. p. [93], a verdict and judgment for or against a common carrier in an action by him against another to whom the goods had been delivered by mistake are evidence for or against the carrier in action against him by owner of the goods. They are evidence against this plaintiff because he had his cross-examination and benefit of opposition. *Vide* 3 Com.Dig. 89.

*Bayard.* The verdict in those cases form a part of the title.

PER CURIAM. The Court are of opinion that this verdict and judgment are to be given in evidence by defendants. And read 1 Morg.Ess.

Charge to the jury by READ, C. J. It is the province of the court to say what the law is; the jury, what are the facts, and also to apply the law to the facts accordingly as you shall think what the law is. It is a principle incontrovertible that plaintiff must show a good title. One of plaintiff's counsel has controverted the origin of plaintiff's title and has read a case from Pennsylvania where it is held that a title must be shown out of the proprietary, and then a title from the person last seised. The origin of title in this case is under a survey made for Thomas Welbourne under a warrant granted as recited before Mr. Penn had received any title from the Duke of York; at which time a court held in this county granted warrants, and the surveyor was his officer. William Clark was at the time of this survey the officer, and Joseph Barkstead the deputy who made this survey. Previous to the return of this survey, Penn had obtained his title which bears date August 1682. He came over in the fall and held his first court at Chester of men convened from Pennsylvania and these lower counties. I cannot tell whether William Clark held the office of Surveyor before his appointment at this court or not. The courts have hitherto advised juries that these surveys, if received into office, though no warrant can be shown, are to be accounted a good inception of title, for there is a presumption that there was such a warrant. The warrant is not kept by the party, for the Surveyor General keeps the warrant, and his deputy the copy. It is contended by the plaintiff, and properly, that William Burton was the person who died last seised, and that is sufficient though no conveyance was shown from Barker to him, for defendants have not claimed under Barker to make it necessary to show such a conveyance.

In this will there is a devise of lands to John in Long Neck. To Joseph and Woolsey he gives the tract now in dispute by moieties in tail, and if John should die without issue, Woolsey to have John's, and Joseph to have the whole of Cheat. But in another part of his will he makes another provision that, if any of his children should think fit to sell, he may do it to any of the family. (Reads that part.) There is a question whether this paragraph is to be taken into parts or in the whole. We conceive the construction must be upon all the parts of the will taken together in order to arrive at the intention of the testator, for it is a statutory provision two hundred years ago that that shall prevail if consistent with the law. There is an intention to confine the transfer to his family and blood forever, which the law will not allow. It cannot be so divided, for the construction must be upon the whole sentence, and it is not to be divided. If William Burton had given the power of disposal without the subsequent restriction, it would have been like the case in Vin.Abr. title "Devise," page 248, cited from Barnardiston, and his intention to restrain again the estate by the remainder to the female descendants confines the preceding intention.

The words, transfer, disposal and purchase, tend very much, when the subject matter admits of it, to show an intention to give a fee; but the disposal is here confined to his family, and this the law will not admit of; and it cannot be divided, and therefore the whole is to be rejected. It is a fixed rule as to boundaries that natural boundaries are most to be depended on and preferred to artificial ones. To determine the boundaries is your province; it is matter of fact and belongs to you solely. The encouragement of settlers was no doubt a motive to the officers to give large measure, and it was an object with Penn to settle his tract as fast as possible to prevent Baltimore's claimants from extending to the fortieth degree of latitude. Oftentimes quantities of marsh were cast into the survey, though not computed, in order to prevent paying quit-rent, as they were not then accounted profitable. The Court think the expressions in William Prettyman's warrant to survey the Cheat according to its known lines and bounds must be pursued. As it does not direct vacancy to be added, it will not authorize the adding of more.

Verdict, guilty as to McIlvain. Not guilty as to the other three; that is, for plaintiff on title and against him on location.